Dear Commissioner Wynn:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 As a matter of law, does a State employee's work-related governmental tort claim against the State employer fall within the exemption of 2000 Okla. Sess. Laws. ch. 371, § 174 (to be codified at 51 O.S. Supp. 2000, § 155(14)) that exempts a State or political subdivision from a loss to any person covered by any "employer's liability act"?
 I. Introduction
¶ 1 To answer your question, we must first determine whether acts such as the Whistleblower Act (74 O.S. Supp. 1999, §840-2.5[74-840-2.5]), the Oklahoma Personnel Act (74 O.S. Supp. 1999, §§840-1.1-840-6.8), and the Oklahoma Discrimination Act (25O.S. Supp. 1999, §§ 1101-1901) (collectively, "workplace acts"), are "employer liability acts" that render a State or municipal subdivision immune from liability under 51 O.S. Supp.2000, § 155[51-155](14), which exempts a State or political subdivision from a loss to any person covered by any Workers' Compensation Act or "any employer's liability act?" The answer to that question is "no"; such workplace acts are not encompassed within the ambit of the phrase "any employer's liability act." Therefore, an employee's work-related tort claim is not barred, as a matter of law, because the employee might have a claim under a workplace act.
 II. Background
¶ 2 First, a bit of legislative history of 51 O.S. Supp. 2000,§ 155[51-155](14) is appropriate. In 1978 the legislature enacted the Oklahoma Governmental Tort Claims Act. See 51 O.S. 1991 andSupp. 1999, §§ 151-200. Section 155(14), in 1978, provided:
 A political subdivision or an employee acting within the scope of his employment shall not be liable if a loss results from:
. . . .
 14. Any claim covered by the Oklahoma Workers' Compensation Act or any claim covered by the Oklahoma Unemployment Compensation Act[.]
51 O.S. Supp. 1978, § 155[51-155].
¶ 3 In 1983, the Oklahoma Supreme Court addressed the Section 155(14) exemption as then written. See Jarvis v. City ofStillwater, 669 P.2d 1108 (Okla. 1983). In Jarvis, the plaintiff, an employee of a private company, sustained injuries in the course of his employment while working on high voltage lines owned by the defendant city. He brought a claim under the Tort Claims Act against the city. The city defended, claiming it was exempt from a claim brought by any person covered by the Oklahoma Workers' Compensation Act. The Supreme Court held "the § 155(14) exclusion bars only the covered employees of the defending political subdivision." Id. A person not employed by the political subdivision was not barred by the Section 155(14) grant of immunity.
¶ 4 In 1984, Section 155 and many of its subsections, including Subsection (14), were amended. After the amendment the relevant part of the statute provided:
 The state or a political subdivision shall not be liable if a loss or claim results from:
. . . .
 14. Any claim covered by any workers' compensation act or any employer's liability act[.]
51 O.S. Supp. 1984, § 155[51-155](14) (emphasis added).
¶ 5 Thus, in that amendment the legislature (1) added the State as a beneficiary of the immunity; (2) added the phrase "or claim" to the introductory clause; (3) changed the exemption from liability for a State or political subdivision to encompass a claim covered by any State's Workers' Compensation Act; (4) deleted the phrase, "Oklahoma Unemployment Compensation Act"; and (5) added an exemption from liability for a State or political subdivision if a person is covered under any "employer'sliability act."
¶ 6 In 1988, the legislature further amended Section 155(14) of the Tort Claims Act to provide:
 The state or a political subdivision shall not be liable if a loss or claim results from:
. . . .
 14. Any loss to any person covered by any workers' compensation act or any employer's liability act[.]
51 O.S. Supp. 1988, § 155[51-155](14) (emphasis added). The substantive amendment changed the word "claim" to "loss" and added "any person."
¶ 7 It is that version which we examine today and it is the breadth of the phrase "any employer's liability act" that must be determined here.
 III. Meaning of the Phrase "Employer's Liability Act"
¶ 8 It is always our paramount duty to ascertain legislative intent. See Clifton v. Clifton, 801 P.2d 693, 696 (Okla. 1990). Thus, the critical undertaking is to ascertain the meaning of the phrase "employer's liability act." We thus may determine the legislature's intent to provide immunity to a state or political subdivision by its amendment to Section 155(14).
¶ 9 In three cases the Oklahoma Supreme Court discussed the amended Section 155(14). In Huff v. State, 764 P.2d 183
(Okla. 1988), the plaintiff was the widow of an employee of a private company who was struck and killed by a State patrol car, while in the course of his private employment. The plaintiff had received benefits under the Workers' Compensation Act. In Huff,
the Court was faced with the question whether, as argued by the defendant State, the 1984 changes expanded the class of claimants who are barred to include nongovernmental employees protected by their own employer's liability under workers' compensation law. The Court, refusing to adopt the expansive reading urged by the State, concluded that the 1984 amendment did not bar nongovernmental employees from the protection of the Tort Claims Act. The Court stated that "The amendment to § 155(14) merely modifies the State's immunity to encompass within its ambit not only Oklahoma-based claims but also those which may be authorized by another state's compensation laws." Id. (footnote omitted). The Court did not address the meaning of the phrase "employer's liability act."[1]
¶ 10 In 1988, the legislature responded to Huff with its final amendment to Section 155(14), which provided immunity from liability for any loss to any person, thus including nongovernmental employees in the ambit of the exclusion. See51 O.S. Supp. 1988, § 155[51-155](14).
¶ 11 In 1992, the Oklahoma Supreme Court decided Gunn v.Consolidated Rural Water Sewer District No 1., 839 P.2d 1345
(Okla. 1992). The question before the Court was whether the defendant district was immune from liability for a claim by an employee of the defendant for a retaliatory discharge action under the Workers' Compensation Act. See id; see also 85 O.S.Supp. 1999, § 5[85-5](A)(1)[2] (Section 5 provided that no employee could be discharged for bringing a claim under the Workers' Compensation Act.). The defendant district advanced several theories to support its immunity. One of these was that Section 155(14) of the Tort Claims Act provided immunity because the retaliatory discharge statute is part of the Workers' Compensation Act. The Court determined the district was not immune from liability under Section 155(14), finding that the retaliatory discharge claim was a statutory tort, not a part of "any workers' compensation." Gunn, 839 P.2d at 1349. The Court did not discuss nor even allude to the possibility that the existence of this "statutory tort," construed as "any employer liability act," might provide immunity from a claim under the Tort Claims Act.
¶ 12 In the Oklahoma Supreme Court's third decision construing Section 155(14), the Court determined the 1988 amendment that added the phrase "any person" expanded the class of claimants who are barred by the immunity grant of Section 155(14) to nongovernmental employees. See Childs v. State ex rel. OklahomaState Univ., 848 P.2d 571, 575 (Okla. 1993). Again, as inHuff and Gunn, the Court did not address the meaning of the phrase "employer's liability act."
¶ 13 Because neither extant Oklahoma jurisprudence, nor the Oklahoma Statutes, have addressed the scope of the phrase "any employer's liability act," we must define the scope of the phrase, looking to the context in which it was used and to its use in other similar statutes to determine legislative intent.See State v. Stegall, 253 P.2d 183, 187 (Okla.Crim. 1953).
¶ 14 There exists a federal "employer liability act" and numerous State acts titled or described as "employer liability acts." A review of those acts demonstrates that "any employer's liability act" should not be construed to render the State or political subdivisions exempt from a claim under the Tort Claims Act, if a person also has a claim for a loss against an employer which arises by virtue of a workplace act, such as the Oklahoma Personnel Act or the Whistleblower Act.
¶ 15 The Federal Employer Liability Act provides liability for damages to workers injured or killed in employment for railroad common carriers in interstate commerce.[3] See45 U.S.C. § 51 (1986). Additionally, examples of State statutes and jurisprudence demonstrate the consistent, narrow characterization of the phrase "employer's liability act" as relating to personal injury or death to an employee in a specific circumstance.
¶ 16 The phrase "`employer's liability act" was descriptive of a state act covering personal injury claims arising from employment in a class of businesses such as railroads, street railways, factories, workshops, warehouses and mines. See Sumeyv. Craig Mountain Lumber Co., 152 P. 181 (Idaho 1915); Idaho Code § 44-1401 (Michie 1999); Ariz. Rev. Stat. §§ 23-801-23-805 (1999). In some states "employer's liability act" described an act which covered employees who worked in occupations in which a danger of disease existed. See Lockhart v. Kansas City,175 S.W.2d 814, 816-17 (Mo. 1943) (describing an act covering workers in occupations in which they were exposed to disease as an "employer's liability act.") In Oregon, an act requiring an owner, contractor or subcontractor having charge of any work involving a risk or danger to an employee to use all care practicable for protection of life and limb, without regard to additional cost of "suitable material or safety appliance and devices" was described as an "employer's liability act." SeeTorres v. United States Nat'l Bank of Or., 670 P.2d 230, 232
(Or.Ct.App. 1983) (quoting Or. Rev. Stat. § 654.305 (1983)).
¶ 17 In some cases an employer's liability act was clearly a precursor or analogous to a state's Workers' Compensation Act.See Moore v. Lumbermen's Reciprocal Ass'n, 241 S.W. 1105, 1108
(Tex.Civ.App. 1922), rev'd on other grounds, 262 S.W. 472
(Tex.Comm.App. 1924) (Pete Sanders was killed in the course of his employment while his employer was carrying a policy of insurance with the defendant in error as defined in the Employer's Liability Act); City of Hammond v. Biedron,652 N.E.2d 110, 112 (Ind.Ct.App. 1995) ("The Employer's Liability Act was enacted in 1911 prior to passage of Indiana's worker's compensation laws. Like the Worker's Compensation Act . . . the ELA was intended to alleviate the harshness of the common law in actions against employers for damages stemming from industrial accidents.").
¶ 18 Based on the characterization of both a federal "employer's liability act" and numerous State acts as relating to personal injury or death of a worker, it is logical to conclude that the legislature intended to render the State and political subdivisions immune from liability for a loss relating to personal injury or death covered by a specific act denominated in particular by a State or federal statute or described by judicial decision as an "employer's liability act."
¶ 19 In addition to the voluminous characterization of the phrase "employer's liability act" found in federal and State statutes and case law, Oklahoma Supreme Court decisions direct us toward a limiting characterization of "employer's liability act." First, the Court has opined, initially expressed in Jarvis and restated in Huff, that the provision of The Tort Claims Act which we examine is ambiguous. See Gunn, 839 P.2d at 1349. InJarvis, the Court said that Section 155(14) was "fraught with ambiguity." Jarvis, 669 P.2d at 1110. We cannot divine its intent from a mere reading of the statute; rather, an understanding of the phrase "employer's liability act" must be gleaned through the examination of that phrase as used in State and federal statutes. That examination supports the narrow construction of "employer's liability act" adopted here.
¶ 20 Moreover, to expand the meaning of the phrase "employer's liability act" to shield governmental entities from responsibility for claims under the Oklahoma Personnel Act, the Whistleblower Act and the Oklahoma Discrimination Act would violate one of the basic tenets expressed by the Oklahoma Supreme Court. See Gunn, 839 P.2d at 1349. After once again summarizing the jurisprudential considerations of the Tort Claims Act, the Court stated, "We are powerless to read into legislative law tort accountability exceptions not made in the text." Id.
"Immunity cannot be read into a legislative text that is silent, doubtful or ambiguous." Id. Following that teaching, the term "employer's liability act" in Section 155(14) of the Tort Claims Act encompasses only those federal and State employer liability acts relating to personal injury or death of an employee in the workplace. See Nelson v. Pollay, 916 P.2d 1369, 1375 (Okla. 1996) ("A statutory grant of immunity must be explicit — immunity will not be divined from a legislative text that is silent, doubtful or ambiguous.").
¶ 21 Additionally, the phrase "employer's liability act" must be strictly construed under the Tort Claims Act. Any other construction would threaten to devour the general policy that is embodied in the Tort Claims Act, a result not favored in Oklahoma. See Kish v. City of Oklahoma City, 859 P.2d 1131,1133 (Okla.Ct.App. 1993). For example, to bar an employee who has a loss as defined by the Whistleblower Act from bringing a claim under the Tort Claims Act would greatly proscribe remedies available to the employee. The Whistleblower Act provides only protection from disciplinary action for an employee who is a "whistleblower," outlines punishment for the official who takes that forbidden disciplinary action, and allows the prevailing employee an award of attorney fees. See 74 O.S. Supp. 1999, §§840-2.5[74-840-2.5], 840-6.6-840-6.8. The type of monetary damages permitted under the Tort Claims Act is simply not found in the Whistleblower Act. Compare 74 O.S. Supp. 1999, §§ 840-2.5[74-840-2.5],
840-6.6-840-6.8; and 2000 Okla. Sess. Laws ch. 351, § 10 (to be codified at 51 O.S. Supp. 2000, § 154[51-154]) (providing up to $175,000 per claimant for loss).
¶ 22 Finally, to construe "employer's liability act" to apply only to personal injury and death claims similar to or analogous to workers' compensation claims does not render the phrase useless. Rather, that construction would immunize the State or a political subdivision from claims under other acts, both State and federal, which might be alternatives or analogous to Workers' Compensation Act claims. It is logical that the legislature intended to so limit the grant of immunity to any Workers' Compensation Act claim or any alternative claim for personal injury or death that might be brought under another state or federal act. For example, as one court explicitly stated, that state's Employer's Liability Act provides for an alternative to its Workers' Compensation Act. See City of Hammond,652 N.E.2d at 112. Construing "employer's liability act" as such an alternative to a Workers' Compensation Act claim relating to personal injury or death in the workplace seems to best fulfill our duty to give effect to the intention and purpose of the legislature as expressed in Section 155(14).
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The phrase "employer's liability act" in 2000 Okla. Sess. Laws ch. 371, § 174 (to be codified at 51 O.S. Supp. 2000, § 155[51-155](14)) does not include such acts as the Whistleblower Act (74 O.S. Supp. 1999, § 840-2.5), the Oklahoma Personnel Act (74 O.S. Supp. 1999, §§ 840-1.1-840-6.8), and the Oklahoma Discrimination Act (25 O.S. Supp. 1999, §§ 1101-1901). The above acts are illustrative only of the many acts not included as an "employer's liability act" for purposes of 51 O.S. Supp. 2000, § 155(14).
 2. As a matter of law, a State employee's work-related claim for loss under the Tort Claims Act does not fall within the immunity granted to a State or municipal subdivision by 51 O.S. Supp. 2000, § 155(14). Section 155(14) does not render a State or political subdivision immune from a claim for loss brought by any person who arguably has a claim under a workplace act, including, but not limited to, the Whistleblower Act (74 O.S. Supp. 1999, § 840-2.5), the Oklahoma Personnel Act (74 O.S. Supp. 1999, §§ 840-1.1-840-6.8), and the Oklahoma Discrimination Act (25 O.S. Supp. 1999, §§ 1101-1901).
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 GRETCHEN GROVER HARRIS ASSISTANT ATTORNEY GENERAL
[1] The Court, in Huff, 764 P.2d at 186, while not explicitly defining the scope of the term "employer's liability act" opined "As do the terms of its present version, the earlier version of § 155(14) did not appear explicitly to fashion greater immunity from tort liability than that afforded by compensation law."Id. n. 19.
[2] Section 5 was amended in 1992, 1994 and 1998. None of the amendments are relevant to our discussion today.
[3] The statute provides:
 Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.
45 U.S.C. § 51 (1986).