1970 OK 169

2005 OK CIV APP 12

**BIRD CONSTRUCTION COMPANY, INC., Plaintiff/Appellant/Counter–Appellee,**

v.

**OKLAHOMA CITY HOUSING AUTHORITY, Defendant/Appellee/ Counter–Appellant.**

No. 98,703.

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 7, 2004.

Certiorari Denied Feb. 7, 2005.

Evan B. Gatewood, Hayes Magrini & Gatewood, Oklahoma City, OK, for Plaintiff/Appellant/Counter–Appellee.

R. Steven Haught, Daugherty Fowler, Peregrin & Haught, Oklahoma City, OK, for Defendant/Appellee/Counter–Appellant.

Opinion by TOM COLBERT, Chief Judge:

¶ 1 Bird Construction Company, Inc., appeals from the trial court's post-judgment orders in its successful claim against the Oklahoma City Housing Authority (OCHA) for breach of contract and libel. OCHA counter-appeals from the judgment and award of pre-judgment and post-judgment interest. The issues on appeal are numerous. Based upon our review of the record and applicable law, we conclude that the majority of the issues raised by the parties do not warrant reversal, but that the trial court did err in part. We, therefore, affirm in part, reverse in part, and remand for further proceedings in accord with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On August 15, 1994, Bird and OCHA executed a construction contract for the rehabilitation of a housing project. Bird's performance as general contractor was delayed by errors in the plans and specifications and was further delayed by OCHA's procedures to make the necessary corrections. The parties also developed a dispute over payment. Bird's position was that OCHA had required it to perform work beyond the scope of the contract, entitling it to additional payment. OCHA's position was that the required work was part of the contract. Ultimately, OCHA declared Bird in default and completed the remaining work itself. OCHA also sent a copy of its letter declaring Bird in default, as well as copies of the preceding correspondence, to Bird's bonding company. Those letters placed full blame for the delays and ultimate termination on Bird, without acknowledging any other causes. Ultimately, Bird was unable to obtain bonds to secure new contracts.

¶ 3 Bird sued OCHA for breach of contract and libel. Following a trial, a jury returned a verdict in Bird's favor and awarded damages of $394,355.01, including $186,823.81 for breach of contract and $207,531.20 for libel. The trial court entered judgment on the verdict, including pre-judgment and post-judgment interest, but capped the libel award at $175,000. OCHA's motion for new trial was denied. Bird then filed a motion for attorney fees and OCHA filed a motion to prohibit execution on the judgment. The trial court denied Bird's motion, but granted OCHA's, prohibiting Bird from executing on the judgment.

¶ 4 Bird appeals from the trial court's orders denying attorney fees and prohibiting execution on the judgment. OCHA appeals from the underlying judgment, asserting that

the trial court erred in awarding pre-judgment and post-judgment interest, used the wrong amount to cap the libel award, erred in permitting the libel action to go to the jury, and erred in allowing certain testimony. OCHA further asserts that the damages awarded by the jury were excessive.

## DISCUSSION

¶ 5 Because OCHA appeals portions of the underlying judgment, we will consider the issues it has raised first. We will then address the issues Bird raises on appeal regarding the post-judgment orders.

## I. Libel

¶ 6 OCHA contends the trial court erred in submitting Bird's libel claim to the jury. When we review a motion for directed verdict, we apply the same standard used in motions for judgment notwithstanding the verdict. *See McInturff v. Okla. Natural Gas Transmission Co.,* 1970 OK 169, ¶ 9, 475 P.2d 160, 162. We must disregard the evidence favorable to the defendant and, unless there is an entire absence of proof of the plaintiff's right to recover, we must conclude that the motion should have been denied. *Sadler v. T.J. Hughes Lumber Co.,* 1975 OK CIV APP 30, ¶ 4, 537 P.2d 454, 456. "Only if all the inferences to be drawn from the evidence are in favor of the moving party will a directed verdict withstand appellate scrutiny." *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 6, 948 P.2d 298, 302.

¶ 7 OCHA argues that Bird did not establish the elements of libel. Libel is defined as "a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation." 12 O.S.2001 § 1441. Libel is a form of defamation, which requires "(a) a false and defamatory statement concerning another, (b) an unprivileged publication to a third party, (c) fault amounting at least to negligence on the part of the publisher, and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the pub-

lication." Restatement (Second) of Torts § 558 (1977). "A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Herbert v. Okla. Christian Coalition,* 1999 OK 90, n. 4, 992 P.2d 322.

¶ 8 The statements Bird alleged were libelous were made in the termination letter sent by OCHA to Bird and its bonding company. It stated, "A determination has been made that your failure to perform is not excusable." Additional statements in the letter were, "You have failed to perform work in a timely manner;" "You have failed to comply with the requirements of . . . the contract;" "You have failed to follow specifications;" and "You have been unreasonable regarding unit pricing."

¶ 9 OCHA first argues that Bird did not establish malice. Bird, however, was not required to prove malice, because it is not a public figure. *Sturgeon v. Retherford Publ'ns, Inc.,* 1999 OK CIV APP 78, ¶ 10, 987 P.2d 1218, 1223. It needed to prove only that the statements were false *or* malicious. 12 O.S.2001 § 1441.

¶ 10 OCHA next asserts that the statements could not be termed false, because they are statements of opinion.

As a general rule, statements which are opinionative and not factual in nature, which cannot be verified as true or false, are not actionable as slander or libel under Oklahoma law. *However, if an opinion is stated as or "is in the form of a factual imperative," or if an opinion is expressed without disclosing the underlying factual basis for the opinion, the opinion is actionable under Oklahoma law if the opinion implies or creates a reasonable inference that the opinion is justified by the existence of undisclosed defamatory and false facts.*

*Metcalf v. KFOR–TV, Inc.,* 828 F.Supp. 1515, 1529 (W.D.Okla.1992) (emphasis added; citations omitted). Taking the statements in the light most favorable to Bird, we conclude

that they are not stated as opinions, but as verified facts.

¶ 11 Bird introduced evidence that the statements in the letter are false. When questioned about the letter, Charlie Allen Dunbar, contracting officer for OCHA, admitted that it did not acknowledge that Bird was not responsible for all of the delays. Dunbar admitted that the letter "lays all the blame at [Bird's] doorstep," without acknowledging that much of the delay was due to errors in the plans and to OCHA's bureaucratic process. Indeed, Dunbar admitted that, during the several-month delays blamed in the letter on Bird, it was contractually forbidden from proceeding on the areas causing the problems. As a result, even if we interpret OCHA's statements as opinions, they support the reasonable inference that they are "justified by the existence of undisclosed defamatory and false facts." *Id.*

■ ¶ 12 OCHA asserts further that the letter was not published because Bird did not prove that it was sent to Bird's bonding company. This argument ignores the testimony by OCHA's own employee that the letter was sent to the bonding company. Similarly, OCHA's argument that Bird did not establish that it was damaged by the defamatory statements ignores the evidence of just such damage.

■ ¶ 13 Finally, OCHA contends Bird's libel claim cannot succeed because the Governmental Tort Claims Act (GTCA) exempts governmental entities from liability for "unintentional misrepresentations." *See* 51 O.S. Supp.2003 § 155(17). This issue was not raised at trial and is waived. "Trial courts are not traditionally reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it." *Gaines v. Sun Ref. & Mktg.*, 1990 OK 33, ¶ 20, 790 P.2d 1073, 1080 (overruled on other grounds by *Davis v. B.F. Goodrich*, 1992 OK 14, 826 P.2d 587); *see also Carswell v. Okla. State Univ.*, 2003 OK CIV APP 3, ¶ 6, 62 P.3d 786, 788; *Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 605 (10th Cir.1994)(governmental entity can waive GTCA's application).[1] The trial court did not err in submitting Bird's libel claim to the jury.

## II. Damages

¶ 14 OCHA next asserts the damages award was flawed in two ways. First, it contends the verdict was excessive. Second, it contends the tort damages should have been capped at $100,000, rather than $175,000.

### A

■ ¶ 15 Whether the damages awarded by the jury are excessive presents a question of fact. We accord great deference to a jury's verdict and will affirm it as long as it is supported by any competent evidence. *El-*

1. Although the issue was not raised by the parties, we conclude that waiver can apply in the context of the Governmental Tort Claims Act, 51 O.S.2001 & Supp.2003 § 151–172. In *Hathaway v. State ex rel. Medical Research & Technical Authority*, 2002 OK 53, ¶ 11, 49 P.3d 740, 750, Justice Kauger, concurring in part and dissenting in part, stated:

 [W]here the governmental entity places itself in the same position as an individual, [a] defense [can be] waived. Through the enactment of the Tort Claims Act, the Legislature has made governmental entities liable in tort to the same extent as an individual. The waiver and the clear statement in 51 O.S.1991 § 164 that procedural rules apply to governmental tort claim actions prohibits the Authority from relying on the general rule that governmental entities may not waive a statute of limitations. (Footnotes omitted.)

 Section 164 states:

 The laws and statutes of the State of Oklahoma and the Rules of Civil Procedure, as promulgated and adopted by the Supreme Court of Oklahoma insofar as applicable and to the extent that such rules are not inconsistent with the provisions of this act, shall apply to and govern all actions brought under the provisions of this act.

 51 O.S.2001 § 164.

 We also are not convinced that 51 O.S. Supp. 2003 § 155(17) would succeed in blocking Bird's libel claim. The exemptions in section 155 are generally limited in scope. *See Salazar v. City of Okla. City*, 1999 OK 20, ¶¶ 26–27, 976 P.2d 1056, 1065–66; *Nguyen v. State*, 1990 OK 21, ¶ 4, 788 P.2d 962, 964. Although no reported cases have resulted in a defamation claim succeeding against a governmental entity in Oklahoma, defamation has been considered without comment in at least two cases. *See Hughes v. Bizzell*, 1941 OK 277, 117 P.2d 763, and *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, 91 P.3d 673.

*more v. Doenges Bros. Ford, Inc.,* 2001 OK CIV APP 27, ¶ 7, 21 P.3d 65, 69 (citing *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.,* 1997 OK 7, ¶ 3, 933 P.2d 282, 287; *Sides v. John Cordes, Inc.,* 1999 OK 36, ¶ 17, 981 P.2d 301, 307).

¶ 16 The jury awarded total damages of $394,355.01, which included $186,823.81 for breach of contract and $207,531.20 for libel. Bird presented evidence that it had performed, but not been paid for, work valued at $121,837.33. Bird also presented evidence that it had suffered damages in the form of extended overhead and delay of $145,416. Finally, Bird presented evidence that it had lost profits of $150,000 per year from 1995 through 2000. There is competent evidence to support the jury's award of damages.

**B**

¶ 17 Whether the trial court should have capped the damages for libel at $100,000 or $175,000 presents a question of law. We review questions of law *de novo. Clayton v. Fleming Cos.,* 2000 OK 20, ¶ 11, 1 P.3d 981, 984. The cap applied to the damages award comes from the GTCA. 51 O.S. Supp.2003 § 154(A). When Bird's claim accrued in 1995, the cap was $100,000. 51 O.S. Supp. 1995 § 154(A). The cap was raised to $175,000 in 2000. 51 O.S. Supp.2000 § 154(A). According to a recent opinion issued by another division of this Court, a trial court should apply the cap in effect at the time the action accrued. *Carswell v. Okla. State Univ.,* 2003 OK CIV APP 3, ¶ 8, 62 P.3d 786, 789. Here, the proper amount of the cap was $100,000.

¶ 18 Bird argues that OCHA waived this argument because it did not raise the issue at trial, in its motion for new trial, or in its amended motion for new trial. Generally, a party's failure to timely raise an issue to a trial court will result in that issue's waiver. Again, "[t]rial courts are not traditionally reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it." *Gaines,* 1990 OK 33, ¶ 20,

790 P.2d at 1080; *see also* 12 O.S.2001 § 991(b).

¶ 19 OCHA argues that it could not have raised the issue because *Carswell* was not released for publication until after it filed its amended motion for new trial. OCHA's argument, however, was clearly available to it based on the express language of section 154, which provides that the cap shall apply to all claims arising *after* the effective date of the Act. The obviousness of the argument is demonstrated by *Carswell's* cursory treatment of the argument to the contrary. *Carswell,* 2003 OK CIV APP 3, ¶ 8, 62 P.3d at 789.

¶ 20 However, OCHA did raise the general applicability of the GTCA to Bird's libel claim and the trial court applied the cap, albeit for the wrong amount. Moreover, section 154(A)'s cap is in the nature of a statutory mandate, providing that the political subdivision's liability "shall not exceed" the capped amount. The doctrine of waiver does not apply to issues of fundamental error. *Sullivan v. Forty–Second West Corp.,* 1998 OK 48, ¶¶ 6–7, 961 P.2d 801, 802–03. We conclude that OCHA's failure to timely raise this issue did not result in a waiver. On remand, the trial court shall reduce the judgment amount on Bird's claim of libel to $100,000.

**III. Interest**

¶ 21 OCHA next asserts the trial court erred in awarding Bird pre-judgment and post-judgment interest on its libel claim and pre-judgment interest on its contract claim. This presents a question of law concerning the application of statutes, which we review *de novo. In re A.N.O.,* 2004 OK 33, ¶ 3, 91 P.3d 646, 647.

**A**

¶ 22 The jury awarded Bird $207,531.20 for libel. The trial court "entered judgment" in that amount and added pre-judgment interest of $119,568.92 until August 28, 2002, and $42.52 per day thereafter until judgment was actually entered. It also awarded post-judgment interest. The court reduced the total judgment for the tort claim to $175,000, as

discussed above. Finally, it stated that "nothing in the judgment shall preclude plaintiff from seeking further recovery of the full amount of the libel judgment from other entities on any applicable contract of insurance."

¶ 23 OCHA contends the court erred in awarding interest because it exceeds the statutory cap, citing *Huff v. State,* 1988 OK 118, 764 P.2d 183 (superseded by statute on other grounds), and *Pine v. State ex rel. Oklahoma Memorial Hospital,* 1996 OK CIV APP 6, 913 P.2d 1375. In *Huff,* the Oklahoma Supreme Court held that a trial court erred in adding pre-judgment interest to a tort-damages award against the State because the total award exceeded the statutory limit. *Huff,* 1988 OK 118, ¶ 11, 764 P.2d at 188. In *Pine,* the Court of Civil Appeals extended *Huff's* holding to post-judgment interest. *Pine,* 1996 OK CIV APP 6, ¶ 8, 913 P.2d at 1377.

¶ 24 Bird argues that the award of interest does not offend *Huff* and *Pine,* because it does not cause the award against OCHA to exceed the statutory maximum. Bird points to other portions of the GTCA, which permit governmental entities to purchase liability insurance, 51 O.S.2001 § 167(A)(1), and permit a holder of a judgment against a government entity to collect that judgment from an insurer, 51 O.S.2001 § 159(B).

¶ 25 We cannot agree. Section 167(A)(1) allows a municipality to insure itself "against all or any part of any liability it may incur for death, injury or disability of any person." The maximum liability OCHA can "incur" in this situation is the statutory maximum set forth in section 154(A). Section 167(A)(1) does not give a municipality open-ended authority to obtain insurance for any amount. *See generally* Op. Att'y Gen., 1980 OK AG 31, 12 Okl. Atty. Gen. 45.

¶ 26 However, the award is theoretical only, since OCHA's insurance carrier, if it has one, was not a party to the case below and is not a party to this appeal. The trial court's award of interest does not affect the judgment against OCHA and is not, therefore, appropriate for this Court's review. *See generally Edwards v. Hanna Lumber Co.,* 1966 OK 20, ¶ 6, 415 P.2d 980, 981

(appellate courts do not decide moot questions).

**B**

¶ 27 OCHA also appeals the award of pre-judgment interest on Bird's contract claim. In Oklahoma, a prevailing plaintiff can recover pre-judgment interest under certain conditions:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

23 O.S.2001 § 6. The issue, then, is whether Bird's contract damages were certain or capable of being made certain before trial.

¶ 28 Bird presented evidence at trial that the value of the work it performed, but for which OCHA did not pay, was $121,837.33. Bird also submitted evidence that OCHA disputed the amounts Bird claimed for extra work. Finally, Bird presented evidence of extended overhead/delay damages of $145,416. The jury awarded Bird $186,823.81. We cannot determine, and Bird has not established on appeal, how the jury reached this exact number.

¶ 29 The cases cited by the parties are of little use as they establish primarily that the right to pre-judgment interest depends upon the facts of each specific case. *See Taylor v. State Farm Fire. & Cas. Co.,* 1999 OK 44, ¶ 16, 981 P.2d 1253, 1260; *Withrow v. Red Eagle Oil Co.,* 1988 OK 16, ¶ 12, 755 P.2d 622, 625; *Cook v. Okla. Bd. of Pub. Affairs,* 1987 OK 22, ¶¶ 39–40, 736 P.2d 140, 153; *Sandpiper N. Apartments, Ltd. v. Am. Nat. Bank & Trust Co. of Shawnee,* 1984 OK 13, ¶ 31, 680 P.2d 983, 993; *Strickland Tower Maint., Inc. v. AT & T Communications, Inc.,* 128 F.3d 1422, 1429 (10th Cir.1997); *Transpower Constructors v. Grand River Dam Auth.,* 905 F.2d 1413, 1422 (10th Cir. 1990); *Liberty Nat'l Bank & Trust Co. of Okla. City v. Acme Tool Div.,* 540 F.2d 1375,

1383 (10th Cir.1976); and *Ottinger v. United States,* 230 F.2d 405, 408 (10th Cir.1956). However, the cases establish that "if the fact-finder must weigh conflicting evidence in order to determine the precise amount of damages due to the plaintiff, then a court cannot grant prejudgment interest." *Strickland,* 128 F.3d at 1429 (citing *Withrow,* 1988 OK 16, ¶ 12, 755 P.2d at 625). It is apparent that the jury weighed the conflicting evidence on damages to reach its verdict on Bird's contract claim. The award of pre-judgment interest was, therefore, in error.

## IV. Hearsay

■ ¶ 30 Finally, OCHA asserts the trial court improperly permitted a witness to testify about an out-of-court statement. At trial, Bird elicited testimony from Allen Paine about statements made by Jack Sibley, an inspector for OCHA, in which Sibley indicated that he "wanted something out of Lanny" (Bird's president), because of the amount of money Bird received from OCHA on a previous job. We review the trial court's decision to admit evidence for abuse of discretion. *Am. Nat'l Bank & Trust Co. of Sapulpa v. BIC Corp.,* 1994 OK CIV APP 70, n. 17, 880 P.2d 420. Paine's testimony, in relevant part, was that:

> A. He said—we were standing out in front of the building we were working on, and Lanny drove off, and his main statement was, "There went the $18,000 that Lanny got on this job."
>
> Q. What was he talking about?
>
> A. The job was originally bid at 20,000 something, and Lanny—somehow they needed a company that could bond it, and the next bid came out at 38,000, and they awarded it to Lanny.
>
> Q. Did he make any statements about the work he was requiring Frank to do or anybody else to do on the project in regards to that previous project?
>
> A. Yeah. He just wanted something out of Lanny.
>
> Q. Because of the previous project?
>
> A. Because of that previous project.

OCHA objected to Paine's testimony as inadmissible hearsay. It argued that (1) Sibley was not a representative of OCHA because he was not the contracting officer, and (2) Sibley was available to testify. Bird countered that the statements were admissions against interest. 12 O.S. Supp.2003 § 2801(B)(2)(a).

■ ¶ 31 Both parties miss the determinative point: the statements were not hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 12 O.S. Supp.2003 § 2801(A)(3). Bird did not offer Sibley's statements to prove that it had profited improperly from an earlier contract, but only to demonstrate Sibley's motivation. The only truth at issue was the veracity of Paine's testimony that Sibley made the statements, not whether Sibley's statements were true. "Testimony which is offered to show that a statement was made and not to prove its truth is not hearsay." *Hain v. State,* 1996 OK CR 26, ¶ 48, 919 P.2d 1130, 1143. The trial court did not err in admitting Paine's testimony about Sibley's statements.

## V. Attorney Fees

■ ¶ 32 We now proceed to the post-judgment issues raised by Bird on appeal, both of which raise questions of law which we review *de novo. In re A.N.O.,* 2004 OK 33, ¶ 3, 91 P.3d 646, 647.

¶ 33 Bird first contends the trial court erred in denying its request for attorney fees. Bird asserts it is entitled to attorney fees pursuant to 12 O.S. Supp.2003 § 936, which provides the following:

> In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

OCHA argues that Bird should not be able to recover under this statute because its lawsuit was not brought for the purposes of recover-

ing "for labor or services rendered or ... relating to the purchase or sale of goods." *Id.*

¶ 34 In *Russell v. Flanagan,* 1975 OK 173, 544 P.2d 510, the Supreme Court concluded that section 936, as it then read, applied only to actions to recover "for labor or services," not to actions on contracts "for labor or services." *Id.* at ¶ 10, 544 P.2d at 512. In *Russell,* the successful plaintiff was a landowner unhappy with the service he received from a plumber. He brought, and prevailed on, an action for breach of warranty. This, however, did not qualify as an action to recover for labor or services. The Supreme Court has since offered the following explanation:

> It is the underlying nature of the suit itself which determines the applicability of the labor and services provisions of section 936. If the action is brought for labor and services rendered, the provisions of section 936 apply. If the nature of the suit is for damages arising from the breach of an agreement relating to labor and services the provisions of this section do not necessarily apply. The question is whether the damages arose directly from the rendition of labor or services, *such as a failure to pay for those services,* or from an aspect collaterally relating to labor and services, such as loss of profits on a contract involving the rendition of labor and services.

*Burrows Constr. Co. v. Indep. Sch. Dist. No. 2,* 1985 OK 57, ¶ 8, 704 P.2d 1136, 1138 (emphasis added; footnotes omitted). In *Burrows,* a construction company filed suit claiming that a school district, for which it had built a building, breached a collateral agreement to appoint the company its agent so that the company could purchase the building materials tax-free. The breach of the alleged agreement meant that the company's costs were higher than anticipated, reducing its profits. The Supreme Court held that the action was not for the rendition of labor or services. *Id.* at ¶ 9, 704 P.2d at 1138. Similarly, where a mining company brought a claim for the profits it lost when a mining contract was repudiated, it was not entitled to attorney fees under section 936.

*Ferrell Constr. Co. v. Russell Creek Coal Co.,* 1982 OK 24, ¶ 30, 645 P.2d 1005, 1011.

¶ 35 Unlike *Ferrell* and *Burrows,* the basis of Bird's claim here was that it was not paid for the work it performed. The evidence of damages Bird submitted was itemized for labor performed under the contract, extra labor required by OCHA's changes, and materials. Bird did not seek lost profits.

> That portion of the judgment which we uphold today ... clearly represents an award for labor and services rendered by [the plaintiff] for the extra work he was required to perform because of the State's breach of contract-based duty to provide him with workable plans. [The plaintiff] was entitled to an attorney's fee on this claim for trial-related services.

*Cook v. Okla. Bd. of Pub. Affairs,* 1987 OK 22, ¶ 44, 736 P.2d 140, 154. Section 936 clearly applies and the trial court erred in denying Bird's request for attorney fees thereunder. On remand, the court shall conduct a hearing to determine the appropriate amount of an attorney fees award.

## VI. Execution on Bird's Judgment

¶ 36 Another of the trial court's post-judgment orders prohibited Bird from executing on its judgment, based on a statute included in the act that creates housing authorities.

> All property, including funds acquired or held by an authority pursuant to this act, shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the authority be a charge or lien upon such property....

63 O.S.2001 § 1075. In general, liens cannot attach to governmental property. *See Broadway Med. Ctr., Inc. v. State ex rel. Dep't of Cent. Servs.,* 2001 OK CIV APP 74, 25 P.3d 311. This governmental immunity offends neither Oklahoma's constitution nor the United States Constitution. *Griggs v. State ex rel. Okla. Dep't of Transp.,* 1985 OK 51, ¶ 8, 702 P.2d 1017, 1019.

¶ 37 OCHA's property is exempt from execution and levy, but Bird should not be completely prohibited from executing on

**570** 

its judgment through proper means. To the extent it prohibits Bird from so doing, the trial court's post-judgment order is in error. OCHA cannot simply ignore a judgment against it, paying the judgment only at its discretion, as it implies on appeal. There are proper mechanisms for pursuing a judgment against a government entity and Bird is entitled to execute on this judgment using those mechanisms, so long as it does not run afoul of section 1075's proscriptions. *See generally* 62 O.S.2001 §§ 361–365.6. The trial court's blanket prohibition against Bird's execution of this judgment is, therefore, reversed.

## CONCLUSION

¶ 38 The trial court did not err in submitting Bird's libel claim to the jury, but should have capped the damages assessed for that tort at $100,000. 51 O.S. Supp.1995 § 154(A). The trial court's award of pre-judgment and post-judgment interest on the judgment amount for libel presents no issue for this court as it does not affect the judgment entered against OCHA, but the award of pre-judgment interest on the damages for breach of contract was erroneous because those damages were not sufficiently definite before trial. 23 O.S.2001 § 6. As for OCHA's complaint about the admission of testimony, the out-of-court statements were not hearsay and were properly admitted.

¶ 39 As for the issues raised by Bird on appeal, the trial court should have awarded Bird its attorney fees, because its primary claim was for the recovery of payment of labor and services. Further, the trial court erred in issuing a blanket prohibition on execution of the judgment. While Bird cannot levy against OCHA's property of the type described in 63 O.S.2001 § 1075, it can execute its judgment in accord with other statutes setting forth the proper mechanism for collecting on judgments against governmental entities.

¶ 40 We, therefore, affirm in part, reverse in part, and remand for the entry of a corrected judgment setting the judgment amount for Bird's tort claim at $100,000, denying pre-judgment and post-judgment interest on the tort claim, denying pre-judgment interest on the contract claim, and al-

lowing Bird to execute on its judgment in accord with the proper statutes. Further, the trial court shall conduct a hearing to establish the proper amount of an attorney fees award and enter such an award.

¶ 41 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

REIF, P.J., and STUBBLEFIELD, J. (sitting by designation), concur.